A08A0385. BEARDEN v. THE STATE.
(662 SE2d 736)

MILLER, Judge.

Following a bench trial in the Superior Court of Cherokee County, Joey Lee Bearden was convicted of a single count of simple assault, in violation of OCGA § 16-5-20 (a) (2). He now appeals, claiming that the evidence was insufficient to sustain his conviction. Discerning no error, we affirm.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence." (Citations and punctuation omitted.) *Jackson v. State*, 252 Ga. App. 268 (1) (555 SE2d 908) (2001). We determine only whether the evidence would have allowed any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt (*Cloyd v. State*, 237 Ga. App. 608 (1) (516 SE2d 103) (1999)), and in doing so we neither weigh that evidence nor judge the credibility of the witnesses. *Morgan v. State*, 277 Ga. App. 670, 671-672 (1) (627 SE2d 413) (2006).

So viewed, the evidence shows that on January 15, 2007 Detective Scott McElroy of the Cherokee County Sheriff's Department responded to a reported domestic disturbance. He was initially dispatched to a gas station in Woodstock, a short distance from the Bearden residence. There he met with Sarah Justice, Bearden's then live-in fiancée. Justice reported that she and Bearden had gotten into a heated argument, and when Bearden's younger daughter stated she was going to call the police, Bearden responded that, if she did so, he would "beat her." Justice further stated that, during the argument, Bearden had broken a door off its hinges, broken a bed post, and taken her purse and cell phone, prompting her to take her young

child and dogs and flee the house. After she arrived at the gas station, Justice used a pay phone to call the Bearden residence, and, when she spoke with Bearden, she heard his two daughters "screaming and crying" in the background.

Detective McElroy testified that Justice was so distraught she could not provide him with further information and, fearing for the safety of the children in Bearden's home, he proceeded to that residence. After Detective McElroy arrived there, he received Bearden's permission to enter the same. Bearden told the officer that he had consumed approximately half of a pitcher of margaritas earlier that evening and that he was on pain medication for an ankle injury.

Once inside the residence, Detective McElroy saw a door off its hinges and a door frame, both of which were broken in a manner consistent with someone either kicking or forcing the door open. Detective McElroy also observed evidence indicating that a post on the four-poster bed had been broken, but that it had very recently been repaired. Because all of this evidence was consistent with Justice's statements, and because Bearden was evasive in answering his questions, Detective McElroy asked and received permission to speak with Bearden's older daughter. The daughter, who was then 17 years old, confirmed that Bearden had broken down the door, broken the bed post, and threatened to beat her younger sister if she contacted the police. The daughter further explained that her father had repaired the bed post immediately before police arrived and stated that she was afraid of her father, particularly when he had been drinking.

Detective McElroy then received permission to speak with Bearden's younger daughter, who was 14 years old. The younger daughter also told McElroy that her father had threatened to beat her if she called the police and that her father had broken the bed during an argument with Justice.

Because the separate statements of all three witnesses were so similar, and because the physical evidence was consistent with those statements, Detective McElroy arrested Bearden for simple assault. Bearden was subsequently charged with two counts of simple assault, one as to Justice and one as to his older daughter. Following a bench trial, the court found Bearden not guilty as to the alleged assault of Justice (Count 1), but guilty of simple assault as to his older daughter (Count 2). This appeal followed.

To sustain a conviction for simple assault, the evidence must show that the defendant "commit[ted] an act which place[d] another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2). "This offense is complete if the assailant has made such a demonstration of violence, coupled with

an apparent ability to inflict injury so as to cause the person against whom it is directed reasonably to fear the injury unless he retreats to secure his safety." (Citations and punctuation omitted.) *Lewis v. State*, 253 Ga. App. 578, 580 (560 SE2d 73) (2002). "The focus of a reasonable apprehension of harm . . . is on the apprehension of the victim" (*Wroge v. State*, 278 Ga. App. 753, 754 (1) (629 SE2d 596) (2006) (citation and punctuation omitted)), and it is for the fact-finder to determine whether the victim's apprehension was reasonable. *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998).

> However, proof that the victim has been placed in apprehension of immediately receiving a violent injury need not necessarily be solely by reason of the victim's testimony of his mental state but may be inferred from the conduct of the victim such as when he retreats to secure his safety.

(Citations omitted.) *Hurt v. State*, 158 Ga. App. 722, 723 (282 SE2d 192) (1981).

On appeal, Bearden argues that the State failed to prove he acted in such a way as to place his older daughter in reasonable apprehension of suffering a violent injury. We disagree.

At trial, the older daughter testified as to her father's violent behavior on the night in question, including his threats of physical violence toward her sister. This testimony was corroborated by the testimony of Bearden's younger daughter and by the statements both daughters and Justice made to Detective McElroy. Additionally, the physical evidence discovered by Detective McElroy supported the testimony that Bearden had become physically violent that night, forcing or kicking open a door and breaking part of a wooden bed post. Detective McElroy took pictures of this damage, and those pictures were introduced into evidence.

Furthermore, Bearden's older daughter testified that she was afraid that night that her father might hit her, a statement supported by the fact that she tried to stay in her bedroom during the incident, and that her father yelled at her when she tried to come out of the bedroom. The older daughter also testified that her father had previously pushed her when angry with her, and that her father had a history of abusing women.

Deferring to the trial court's ability to judge the credibility of the witnesses, as we must, this evidence was sufficient to support the trial court's finding that Bearden's conduct on the night in question placed his older daughter under a "reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2). See *Wroge v. State*, supra, 278 Ga. App. at 754; *Paul v. State*, supra, 231 Ga. App. at 528. We therefore affirm Bearden's conviction for simple

assault against his older daughter.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MAY 13, 2008 —
RECONSIDERATION DENIED JUNE 5, 2008.

*Nicholas Pagano*, for appellant.
*Garry T. Moss, District Attorney, Cheryl L. Lee, Assistant District Attorney*, for appellee.